[Civil No. 4232.   Filed July 16, 1941.]

[115 Pac. (2d) 246.]

CULINARY WORKERS AND BARTENDERS LOCAL UNION No. 631 A. F. of L., and HOMER L. WISE, President, and FRANK PIERCE, Secretary of Culinary Workers and Bartenders Local Union No. 631, A. F. of L., Appellants, v. BUSY BEE CAFE, INC., a Corporation, Appellee.

Mr. Geo. T. Wilson, and Messrs. Minne & Sorenson, for Appellants.

Messrs. Lewkowitz & Wein, for Appellee.

Mr. Ira Schneier and Mr. Stanley B. Rider, *Amici Curiae.*

LOCKWOOD, C. J.—This is an appeal by Culinary Workers and Bartenders Local Union No. 631, A. F. of L., and Homer L. Wise, President, and Frank Pierce, Secretary, of such union, defendants, from a permanent injunction granted to Busy Bee Cafe, Inc., plaintiff, in the following language:

"It is further ordered, adjudged and decreed by the Court that a permanent injunction issue, restraining and enjoining Culinary Workers and Bartenders Local Union No. 631, A. F. of L. and Homer L. Wise, President, and Frank Pierce, Secretary of Culinary Workers and Bartenders Local Union No. 631, A. F. of L., their agents, members and employees, and each of them, from picketing the business place of the plaintiff, No. 47 West Washington Street, Phoenix, Arizona."

The facts out of which the proceeding arose are not in serious dispute, and may be stated as follows: Plaintiff was and is engaged in the restaurant and bar business in Phoenix, and employs some seventeen or eighteen men and women in various capacities.

Defendant union is a local union of a national association of men and women skilled in the trades and occupations incident to the operation of businesses like that of plaintiff. Prior to May, 1939, plaintiff's business was conducted on what was commonly termed an open shop basis, that is, part of its employees were and part were not affiliated with any organized labor union, and plaintiff was under no contractual relation of any nature with defendants or any other labor organization to employ union members or to recognize any particular schedule of wages or conditions of operation. Nor were any of its employees dissatisfied with existing conditions to the extent of being on strike. Defendants requested plaintiff to enter into a contract with the union governing the terms and conditions of employment, and upon the latter's refusal to execute such a contract caused pickets to patrol to and fro on the public highway in front of plaintiff's place of business, with banners indicating that plaintiff was unfair to organized labor. Occasionally such pickets would orally inform prospective customers of the situation and request them not to patronize plaintiff's business, but there is no substantial evidence of any physical force, threats or intimidation of any nature whatever being used against prospective patrons. Plaintiff thereupon filed a complaint, asking for an interlocutory and permanent injunction restraining defendants and their members from picketing the Busy Bee Cafe. After various preliminary proceedings a permanent injunction, as above set forth, was issued, and this appeal was taken.

Section 26–109, Arizona Code 1939, has been on our statute since 1913. It reads as follows:

*"No injunction in controversies between employers and employees—Exceptions—Picketing—No* restraining order or injunction shall be granted in any case between employer and employee, or between employ-

ees, or between persons employed and persons seeking employment, involving or growing out of a dispute concerning terms or conditions of employment, unless necessary to prevent irreparable injury to property or to a property right of the party making the application, for which injury there is no adequate remedy at law, and such property or property right must be described with particularity in the application, and no such restraining order or injunction shall prohibit any person or persons from terminating any relation of employment, or from ceasing to perform any work or labor, or from recommending, advising, or persuading others by peaceful means so to do; or from attending at or near a house or place where any person resides or works, or carries on business, or happens to be for the purpose of peacefully obtaining or communicating information, or of peacefully persuading any person to work or to abstain from working; or from ceasing to patronize or to employ any party to such dispute; or from recommending, advising, or persuading others by peaceful means so to do; or from paying or giving to or withholding from any person engaged in such dispute any strike benefits or other moneys or things of value; or from peaceably assembling at any place in a lawful manner and for lawful purposes; or from doing any act or thing which might lawfully be done in the absence of such dispute by any party thereto.''

Its validity was questioned in the case of *Truax* v. *Bisbee Local No. 380,* 19 Ariz. 379, 171 Pac. 121, and this court held the statute was constitutional, and that picketing in a peaceful manner in a labor dispute could not be prevented by injunction. The court further held that the evidence showed the picketing engaged in was of that nature. The case was appealed to the Supreme Court of the United States, and it held that the statute in question as applied by this court violated the Fourteenth Amendment to the Constitution of the United States. *Truax* v. *Corrigan,* 257 U. S. 312, 42 Sup. Ct. 124, 66 L. Ed. 254, 27 A. L. R. 375. That court, however, has recently reconsidered

the entire question of picketing, so-called, in a number of cases, among them being *Thornhill* v. *Alabama,* 310 U. S. 88, 60 Sup. Ct. 736, 84 L. Ed. 1093; *Herndon* v. *Lowry,* 301 U. S. 242, 57 Sup. Ct. 732, 81 L. Ed. 1066; *Schneider* v. *Irvington,* 308 U. S. 147, 60 Sup. Ct. 146, 84 L. Ed. 155; *United States* v. *Carolene Products Co.,* 304 U. S. 144, 58 Sup. Ct. 778, 82 L. Ed. 1234; *Milk Wagon Drivers Union* v. *Meadowmoor Dairies,* 312 U. S. 287, 61 Sup. Ct. 552, 85 L. Ed. 497, 132 A. L. R. 1200; *American Fed. of Labor* v. *Swing,* 312 U. S. 321, 61 Sup. Ct. 568, 570, 85 L. Ed. 513. The last two cases are based upon the right of free speech as guaranteed by the First Amendment to the Federal Constitution. We need not quote extensively from any of these cases as they are available to all who may care to pursue the subject further. They, in effect, reversed the judgment of the Supreme Court in *Truax* v. *Corrigan, supra,* and by inference hold that our statute above set forth is constitutional. But they go further. They hold that a state may not, by its common law or statutory policy, prohibit peaceful persuasion through picketing, even though the dispute is not an immediate employer-employee one. In the last case the court says:

"Such a ban of free communication is inconsistent with the guarantee of freedom of speech. That a state has ample power to regulate the local problems thrown up by modern industry and to preserve the peace is axiomatic. But not even these essential powers are unfettered by the requirements of the Bill of Rights. The scope of the Fourteenth Amendment is not confined by the notion of a particular state regarding the wise limits of an injunction in an industrial dispute, whether those limits be defined by statute or by the judicial organ of the state. A state cannot exclude workingmen from peacefully exercising the right of free communication by drawing the circle of economic competition between employers and workers so small as to contain only an employer and those

directly employed by him. The interdependence of economic interest of all engaged in the same industry has become a commonplace. *American [Steel] Foundries* v. *Tri-City [Central Trades] Council*, 257 U. S. 184, 209, 42 Sup. Ct. 72, 78, 66 L. Ed. 189 [199], 27 A. L. R. 360. The right of free communication cannot therefore be mutilated by denying it to workers, in a dispute with an employer, even though they are not in his employ. Communication by such employees of the facts of a dispute, deemed by them to be relevant to their interests, can no more be barred because of concern for the economic interests against which they are seeking to enlist public opinion than could the utterance protected in Thornhill's case. . . . ''

It is only when the picketing is not peaceful in its nature that injunctive relief may be granted. As was said in the *Meadowmoor Dairies, supra* [312 U. S. 287, 61 Sup. Ct. 555, 85 L. Ed. 497, 132 A. L. R. 1200] :

'' . . . No one will doubt that Illinois can protect its storekeepers from being coerced by fear of window-smashings or burnings or bombings. And acts which in isolation are peaceful may be part of a coercive thrust when entangled with acts of violence. The picketing in this case was set in a background of violence. In such a setting it could justifiably be concluded that the momentum of fear generated by past violence would survive even though future picketing might be wholly peaceful. . . .

''Freedom of speech and freedom of the press cannot be too often invoked as basic to our scheme of society. But these liberties will not be advanced or even maintained by denying to the states with all their resources, including the instrumentality of their courts, the power to deal with coercion due to extensive violence. . . . ''

These quotations show clearly the boundary lines drawn by the highest tribunal in the land. When that tribunal speaks on a federal question, there is nothing for us to do but to obey.

Since it appears that the picketing in the present case came within the rule laid down in the Swing

case, and not that set forth in the Meadowmoor Dairies case, the permanent injunction cannot be sustained.

The judgment of the lower court is reversed and the case remanded with instructions to dissolve the injunction and render judgment in favor of defendants.

McALISTER and ROSS, JJ., concur.