239 P.2d 1003

### POMONIS et al. v. HOTEL, RESTAURANT & BARTENDERS UNION, LOCAL UNION. NO. 716, A. F. OF L. et al.

#### No. 5390.

Supreme Court of New Mexico.

Jan. 15, 1952.

Dean S. Zinn, Santa Fe, for appellants.

Don Wilson, Thomas E. Ahern, Jr. and David R. Gallagher, all of Albuquerque, for appellees.

McGHEE, Justice.

The appellants (plaintiffs below) are owners and proprietors of an eating establishment known as the Mayflower Cafe and located in Santa Fe. The appellees (defendants below) are an unincorporated union affiliated with the American Federation of Labor and certain of the union's officials, agents and employees. The appellants brought suit against the appellees for a permanent injunction and an award of damages for the alleged wrongful picketing and patrolling of their cafe. They were joined in this action by Jerome Travelos who operates a bar and cocktail lounge adjoining said cafe under the name of Mayflower Cocktail Lounge.

The trial court ruled that no labor dispute existed between Travelos and the appellees and that the New Mexico Anti-Injunction Act, Secs. 57–201, 202, N.M.S.A. 1941 Compilation, had no application to that portion of the action and granted a permanent injunction against the picketing of the Mayflower Cocktail Lounge, awarding $500 damages to Travelos. No appeal has been taken from that part of the judgment.

The appellants' complaint was dismissed with prejudice on the basis of the conclusion of the trial court as a matter of law that a labor dispute existed between appellants and appellees and that appellants were not entitled to injunctive relief under the provisions of the Anti-Injunction Act, supra. This appeal followed. Hereafter appellants and appellees will be referred to as they appeared in the trial court, respectively, plaintiffs and defendants.

The pertinent findings of fact made by the trial court are as follows:

"7. That a labor dispute did and does exist between the plaintiffs Tom Pomonis and Angelos Kolonis, doing business as the Mayflower Cafe and the defendants; that a majority of the employees of the Mayflower Cafe had designated the defendant union as their bargaining agent; that the said plaintiffs Tom Pomonis and Angelos Kolonis refused to bargain with the defendant union on hours, wages and working conditions; that the picket line was established before the Mayflower Cafe to compel recognition of the defendant union as bargaining agent for the employees.

"8. That the acts of one or more of the persons taking part in the picket line amounted to force and intimidation and a breach of the peace, but further finds that the vast majority of the pickets conducted themslves in a lawful and orderly manner.

"9. That the plaintiffs Tom Pomonis and Angelos Kolonis committed acts in connection with the picket line which likewise amounted to force and intimidation insofar as the pickets were concerned.

"10. That the picketing arose out of a labor dispute between the plaintiffs Tom Pomonis and Angelos Kolonis, doing business as the Mayflower Cafe, and the defendants, and, therefore, insofar as lawful picketing is concerned, the provisions of the New Mexico Statute placing restrictions on granting of injunctions is applicable; that unlawful acts have been threatened or committed by the defendants, but that the Court is unable to find that substantial and irreparable injury to the property of the plaintiffs Tom Pomonis and Angelos Kolonis, doing business as Mayflower Cafe, will follow unless an injunction is granted."

In addition, the following facts appear affirmatively from the record: J. W. Garcia, one of the defendants and the organizer and representative of the defendant union contacted a number of the employees of the Mayflower Cafe in an attempt to organize them into the union. Approximately 21 persons were regularly employed at the cafe and during the course of the controversy 13 signed applications for membership in the union were secured by Garcia. These applications contained statements authorizing the union, its representatives

or agents to represent the applicants in matters pertaining to hours of labor, wages and working conditions. After a portion of these authorizations had been secured, Garcia on two occasions attempted to confer with the plaintiffs respecting conditions of employment at the cafe, but the plaintiffs refused to negotiate with the union or its representatives. Picketing and patrolling of the cafe was then commenced by the union. The pickets carried placards stating, "Help us defeat a 70 hour week," and "We don't want a 60 hour week." Varying numbers of pickets patrolled before the cafe. The general conduct of the pickets was peaceable except for some name calling and a few isolated instances of violence on the part of both the pickets and the cafe proprietors.

The picketing was initiated on or about May, 2, 1950, and as of that date the union was authorized to represent seven persons actually employed at the cafe. It also held authorizations from four former employees who had either left their jobs voluntarily or were discharged before the picketing was commenced. Two additional authorizations were secured after the picketing began. None of the employees were dues-paying members of the union and only one person employed by the cafe supported the picketing action by refusing to work at the cafe.

At the trial of this case five of the seven persons actually employed by the cafe when the picketing was begun who had executed applications for membership and authorizations repudiated them and asserted they were satisfied with their work, wages and hours. Certain persons employed prior to the time the picketing began testified they were dissatisfied with their work and wages and that they had worked 60 or 70 hours a week during their employment at the cafe and two of them testified they were discharged because of union activities. This testimony was contradicted by plaintiffs.

Plaintiffs assign as error the trial court's conclusion that a labor dispute existed and that the Anti-Injunction Act, supra, controlled plaintiffs' cause of action and constituted grounds for the dismissal of their complaint. They attack certain findings of the trial court as not supported by substantial evidence and urge that if the Anti-Injunction Act does apply they are nevertheless entitled to a permanent injunction against the picketing of their premises by defendants. An additional assignment is made that the trial court erred in dismissing the second count of plaintiffs' complaint which requested legal damages, compensatory and punitive, against defendants for unlawful picketing without making any finding of fact or conclusion of law with respect to such count.

The first question to be determined is whether or not the New Mexico Anti-Injunction Act, supra, is applicable to the present case. Sec. 57–201 of that act provides:

"No court nor any judge or judges thereof within the state of New Mexico shall have jurisdiction to issue a permanent injunction or restraining order in any case involving or growing out of a labor dispute, within the state, except after hearing the testimony of witnesses in open court (with opportunity for cross-examination) in support of the allegations of a complaint made under oath, and testimony in opposition thereto, if offered and presented, and except after findings of all the following facts by the court or judge or judges thereof:

"(a) That unlawful acts have been threatened or committed and will be executed or continued unless restrained;

"(b) That substantial and irreparable injury to complainant's property will follow unless the relief requested is granted;

"(c) That complainant has no adequate remedy at law; and

"Such hearing shall be held after due notice as may be ordered in the discretion of the court, and in such manner as the court shall direct, to all known persons against whom relief is sought."

Plaintiffs' principal contention is that the act does not apply because no labor dispute exists. They assert that no controversy existed between them and their employees.

Our act is silent as to what constitutes a "labor dispute." The Norris-LaGuardia Act, C. 90, Sec. 13, 47 Stat. 73, U.S.C.A. Title 29, Sec. 113, from which our act was patterned contains the following definition: "The term 'labor dispute' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee."

The majority of states adopting similar legislation have incorporated therein substantially the same definition. In fact, no cases have been presented or discovered in which the term "labor dispute" has been defined where the anti-injunction enactment did not itself contain some guide marks as to the legislative intendment of the term.

Plaintiffs urge that we should employ a narrower definition of the term than is found in the Norris-LaGuardia Act, supra, confining the term to direct controversies between an employer and his employees, and some authority is presented for the

view that the federal act has greatly enlarged the scope of relations in which a labor dispute may exist. Donnelly Garment Co. v. International Ladies' Garment Workers' Union, D.C., 20 F.Supp. 767, and J. J. Newberry Co. v. Retail Clerks' Union, D.C., 67 F.Supp. 86.

Although plaintiffs' argument might be persuasive from the standpoint of sheer word connotation, we are precluded from declaring such a definition by the pronouncement of the Supreme Court of our land in American Federation of Labor v. Swing, 312 U.S. 321, 61 S.Ct. 568, 570, 85 L.Ed. 855, where an injunction against picketing was sought in a similar case. It was there said: "Such a ban of free communication is inconsistent with the guarantee of freedom of speech. That a state has ample power to regulate the local problems thrown up by modern industry and to preserve the peace is axiomatic. But not even these essential powers are unfettered by the requirements of the Bill of Rights. The scope of the Fourteenth Amendment is not confined by the notion of a particular state regarding the wise limits of an injunction in an industrial dispute, whether those limits be defined by statute or by the judicial organ of the state. A state cannot exclude workingmen from peacefully exercising the right of free communication by drawing the circle of economic competition between employers and workers so small as to contain only an employer and those directly employed by him. The interdependence of economic interest of all engaged in the same industry has become a commonplace. American [Steel] Foundries v. Tri-City Council, 257 U.S. 184, 209, 42 S.Ct. 72, 78, 66 L.Ed. 189, 27 A.L.R. 360. The right of free communication cannot therefore be mutilated by denying it to workers, in a dispute with an employer, even though they are not in his employ." See also, Bakery & Pastry Drivers & Helpers, I. B. T. v. Wohl, 315 U.S. 769, 62 S.Ct. 816, 86 L.Ed. 1178, and Cafeteria Employees Union v. Angelos, 320 U.S. 293, 64 S.Ct. 126, 88 L.Ed. 58. This statement is also supported by more recent cases, although distinguished, to-wit: Building Service Employees International Union v. Gazzam, 339 U.S. 532, 70 S.Ct. 784, 94 L.Ed. 1045; International Brotherhood of Teamsters, C. W. & H. Union v. Hanke, 339 U.S. 470, 70 S.Ct. 773, 94 L.Ed. 995, 13 A.L.R.2d 631. These cases will be the subject of further discussion hereafter.

There has earlier been doubt as to the limits to which a state or its courts might go in granting an injunction where a labor dispute exists and picketing is peaceful. In fact, the decision in American Federation of Labor v. Swing, supra, has led at least one of our courts to say that it is only when picketing is not peaceful in its

nature that injunctive relief may be granted. Culinary Workers and Bartenders Union v. Busy Bee Cafe, 57 Ariz. 514, 115 P.2d 246. However, three recent decisions by the United States' Supreme Court have served to clarify the area where injunctions may be constitutionally granted. These cases are: Building Service Employees International Union v. Gazzam, supra; International Brotherhood of Teamsters, C. W. & H. Union v. Hanke, supra; Hughes v. Superior Court of California, 339 U.S. 460, 70 S.Ct. 718, 94 L.Ed. 985.

The court held in the first of these decisions that the right of free speech under the First and Fourteenth Amendments is not violated by an injunction restraining a union from picketing an employer's place of business for the purpose of compelling him to coerce his employees' choice of bargaining representative, in violation of a public policy that workers shall be free to join or not to join a union and that they shall be free from the coercion, interference or restraint of employers of labor in the designation of their representatives for collective bargaining.

In the second case the court held the right of free speech is not violated by a state court's injunction prohibiting picketing of a place of business conducted by the owner himself without employees in order to compel him to adopt a union shop.

In the last of the cited cases, the court upheld an injunction restraining picketing of a place of business solely for the purpose of compelling the owner, in violation of the policy of the state, to hire Negro employees in proportion to the number of its Negro customers. Notably in this case the court recognized that while picketing is a mode of communication, industrial picketing is more than free speech, since it involves patrol of a particular locality and since the very presence of a picket line may induce action of one kind or another, quite irrespective of the nature of the ideas being disseminated, a doctrine originally advanced in the concurring opinion of Mr. Justice Douglas in Bakery & Pastry Drivers & Helpers, I. B. T. v. Wohl, supra. Mr. Justice Frankfurter, speaking for the court in Hughes v. Superior Court of California, supra [339 U.S. 460, 70 S.Ct. 721], stated:

"* * * we have found that because of its element of communication picketing under some circumstances finds sanction in the Fourteenth Amendment. Thornhill v. State of Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093; American Federation of Labor v. Swing, 312 U.S. 321, 61 S.Ct. 568, 85 L.Ed. 855; Bakery & Pastry Drivers & Helpers Local 802 of International Brotherhood of Teamsters v. Wohl, 315 U.S. 769, 62 S.Ct. 816, 86 L.Ed. 1178;

Cafeteria Employees Union v. Angelos, 320 U.S. 293, 64 S.Ct. 126, 88 L.Ed. 58. However general or loose the language of opinions, the specific situations have controlled decision. It has been amply recognized that picketing, not being the equivalent of speech as a matter of fact, is not its inevitable legal equivalent. Picketing is not beyond the control of a State if the manner in which picketing is conducted or the purpose which it seeks to effectuate gives ground for its disallowance. (Citing cases.) * * *

"The constitutional boundary line between the competing interests of society involved in the use of picketing cannot be established by general phrases."

■ Bearing in mind these judicial precepts we conclude that no precise or particularized definition of the term, "labor dispute", is practicable, nor do we feel it is desirable. But certainly, in analyzing the facts of each controversy, the fact finder must determine that a real and sincere dispute exists bearing some relation to the employer and concerning some aspect of employment in his enterprise and then, before injunctive relief may yet be denied, he must determine that the collective bargaining activities are in furtherance of some legitimate interest of labor and not in contravention of the public policy of the state.

■ There is substantial evidence to support the finding that a labor dispute existed between the plaintiffs and the defendants and that a portion of the employees had authorized the defendant union to represent them. We do not find evidence to support the finding that a majority of the employees had authorized the defendant union to represent them, but absent a statute to that effect, we cannot arbitrarily declare that authorizations from a majority of the employees are necessary before a strike or picketing may be lawfully commenced. The following cases, under somewhat similar circumstances, recognize the legality of these actions by unions where they represent only a minority of the employees or none: Exchange Bakery & Restaurant, Inc., v. Rifkin, 245 N.Y. 260, 157 N.E. 130; Park & Tilford Imp. Corp. v. International Brotherhood of Teamsters, 27 Cal.2d 599, 165 P.2d 891, 162 A.L.R. 1426; Whitehead v. Miami Laundry Co., 160 Fla. 667, 36 So.2d 382; State ex rel. Culinary Workers' Union v. Eighth Judicial District Court, 66 Nev. ——, 207 P.2d 990. Although some of the employees later repudiated their authorizations, these acts cannot retroactively destroy the relation existing between them and the defendants at the time collective bargaining began.

■ Under the holdings of the Supreme Court of the United States in the cases

cited above, the picketing of the cafe was lawful. We do not condone the isolated instances of violence on the part of the pickets, but the plaintiffs likewise did not conduct themselves at all times in a peaceable manner and cannot in equity complain of these acts.

 The trial court made no separate findings of fact or conclusions of law with respect to count II of plaintiffs' complaint which raised the legal issues of plaintiffs' claim for damages. This omission is not significant, however, as the plaintiffs' entire action, both in equity and law, stands or falls upon the legality of the acts of defendants and the trial court's disposition of this issue respecting the denial of equitable relief equally supports the dismissal of the count for damages without the necessity of repetitive findings. See this court's decision in Holloway v. Evans, 55 N.M. 601, 238 P.2d 457 where the converse of the present situation was presented. There an injunction and award of damages were sought against defendant for the flooding of plaintiff's land. The issues were tried to the jury and we there held the verdict of the jury was a sufficient finding to support the injunction.

The judgment will be affirmed and it is so ordered.

LUJAN, C. J., and SADLER, COMPTON and COORS, JJ., concur.