685 P.2d 389

**WELLBORN PAINT MANUFACTURING COMPANY, a New Mexico corporation, Petitioner-Appellant,**

v.

**NEW MEXICO EMPLOYMENT SECURITY DEPARTMENT, Respondent-Appellee.**

**No. 7487.**

Court of Appeals of New Mexico.

July 10, 1984.

**536**

Robert P. Tinnin, Jr., Jason W. Kent, Daymon B. Ely, Poole, Tinnin & Martin, P.C., Albuquerque, for petitioner-appellant.

Paul Bardacke, Atty. Gen., Paul D. Campos, Asst. Atty. Gen., Albuquerque, for respondent-appellee.

## OPINION

MINZNER, Judge.

Wellborn Paint Manufacturing Company ("Wellborn") appeals the district court's affirmance of a decision by the New Mexico Employment Security Department ("ESD"). ESD's decision declared certain employees of Wellborn eligible for benefits under the New Mexico Unemployment Compensation Act ("Act"), NMSA 1978, Sections 51–1–1 to –54 (Repl.Pamp.1983) for a period during which Wellborn instituted a lockout. We reverse.

Wellborn and union officials began negotiations in November 1982 to replace the collective bargaining agreement that would expire on January 5, 1983. By January 5, the parties had reached agreement on all contract issues except wages. On that date, Wellborn proposed what it characterized as its "last and final" wage increase offer. Union members rejected the proposal later the same day. Wellborn shut down the plant on January 6 for yearly maintenance work.

Wellborn sent a letter to its employees on January 11 advising them that it would institute a lockout on January 17 unless an agreement was reached. Wellborn officials testified that they preferred not to continue plant operations without a contract including a no-strike provision, primarily because they feared that the union might call a strike during the plant's busy season in the spring. The parties maintained contact during this period through an exchange of letters. Neither party changed its position and the parties did not reach a wage agreement, although each indicated a willingness to continue negotiating. Wellborn instituted the lockout on January 17. The employees then filed for unemployment compensation.

The ESD hearing officer concluded that the employees were not entitled to unemployment compensation, applying Section 51–1–7(D), because their unemployment was the result of a labor dispute. Section 51–1–7 provides, in relevant part, "An individual shall be disqualified for, and shall not be eligible to receive, benefits * * * for any week with respect to which the department finds that his unemployment is due to a labor dispute at the factory * * * * *" He also found that negotiations were at an impasse and that the claimants were interested in the labor dispute.

The ESD Board of Review reversed, holding that the lockout was not a disqualifying labor dispute under the statute because the employees were exercising their legal right to bargain prior to the lockout and, since negotiations were not at an impasse, Wellborn was unilaterally responsible for the employees' unemployment. The district court, after independent review of the record, adopted findings and conclusions consistent with those of the Board.

Wellborn argues that the district court erred as a matter of law in holding that a lockout is not a labor dispute unless negotiations between the parties are at an impasse. Wellborn further contends that, even if the statute authorizes such an exception, the district court's finding that negotiations between the parties were not at an impasse is not supported by substantial evidence.

■ The question raised on appeal is one of first impression in New Mexico. Although the reviewing court generally may not substitute its judgment for that of the administrative decision-maker, it may correct the decision-maker's misapplication of the law. *Conwell v. City of Albuquerque,*

97 N.M. 136, 637 P.2d 567 (1981). *See also Mitchell v. Lovington Good Samaritan Center, Inc.*, 89 N.M. 575, 555 P.2d 696 (1976).

## I. "UNEMPLOYMENT ... DUE TO A LABOR DISPUTE" AS INCLUDING LOCKOUTS WHETHER OR NOT NEGOTIATIONS HAVE REACHED AN IMPASSE.

▉ The function of this court in construing a statute is to give effect to legislative intent. *Salazar v. St. Vincent Hospital*, 95 N.M. 150, 619 P.2d 826 (Ct.App.), *rev'd in part on other grounds*, 95 N.M. 147, 619 P.2d 823 (1980). Legislative intent is to be determined primarily by the language used. *Santa Fe Downs, Inc. v. Bureau of Revenue*, 85 N.M. 115, 509 P.2d 882 (Ct.App.1973). We must interpret the language as the legislature understood it when the statute was enacted.

The legislature passed the original Act in 1936. 1936 N.M.Laws (S.S.) Ch. 1. The general purpose of the Act is to relieve involuntary unemployment. Section 51-1-3. The Act calls for liberal construction to accomplish the remedial and humanitarian ends intended by the legislature. *Parsons v. Employment Security Commission*, 71 N.M. 405, 379 P.2d 57 (1963).

All states have unemployment compensation legislation, and each state has a specific disqualification provision barring from benefits workers unemployed due to labor disputes. Shadur, *Unemployment Benefits and the "Labor Dispute" Disqualification*, 17 U.Chi.L.Rev. 294 (1950).

Prior to 1979 our statute disqualified claimants whose "unemployment [is] due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he is or was last employed." *See* NMSA 1953, § 59-9-5(d) (Supp.1975). In *Albuquerque-Phoenix Express, Inc. v. Employment Security Commission*, 88 N.M. 596, 544 P.2d 1161 (1975), the New Mexico Supreme Court interpreted this language as not disqualifying strikers when the strike did not stop work at the employer's premises. The

court reasoned that the phrase "stoppage of work" referred to a stoppage of work by the employer rather than the employee. The 1979 amendment eliminated the phrase "stoppage of work." 1979 N.M.Laws Ch. 280, § 14. Our statute, as a result of this amendment, is unique. *See generally* Annot., 62 A.L.R.3d 437 (1975).

Appellant has argued that the 1979 amendment evidences a legislative intent to broaden the exception. We agree. The language of the amendment, however, established a general phrase, "unemployment * * * due to a labor dispute," that must be applied to specific facts. At trial in the district court and on appeal, the parties have argued that the question for interpretation is whether the legislature intended to include all lockouts within the term "labor dispute" or only lockouts which result after the parties have reached an impasse in collective bargaining. We believe that this statement of the issue is too narrow: the entire phrase requires interpretation.

### A. THE INCLUSION OF LOCKOUTS WITHIN THE TERM "LABOR DISPUTE."

It seems clear that the legislature intended to include a lockout within the term "labor dispute." The language of the particular provision within which the term appears, New Mexico case law interpreting the term in another context, and the interpretation given the term in other jurisdictions support this conclusion.

Although the legislature did not explicitly define "labor dispute" in Subsection (D) of the statute, in Subsection (C)(2)(a), directly preceding the provision in question, the legislature refers to "strike, lockout or other labor dispute." This is strong evidence of legislative intent to include lockouts as potentially disqualifying labor disputes for purposes of this statute. *See In re North River Logging Co.*, 15 Wash.2d 204, 130 P.2d 64 (1942). *See also Buchholz v. Cummins*, 6 Ill.2d 382, 128 N.E.2d 900 (1955). Further, Section 308(E) of the ESD's own Rules and Regulations, dealing with the employer's duty to give notice of a

labor dispute, also uses the phrase "strike, lockout or other labor dispute."

Our courts have been called upon to define "labor dispute" as used by the legislature in the context of NMSA 1978, Section 50-3-1, which restricts the situations in which our courts may issue permanent injunctions. In *Pomonis v. Hotel, Restaurant & Bartenders Union, Local Union No. 716*, 56 N.M. 56, 239 P.2d 1003 (1952), the court defined "labor dispute" as including " 'any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee.' " 56 N.M. at 61, 239 P.2d at 1006 (quoting the Norris-La Guardia Act, 29 U.S.C.S. § 113(c) (Law.Co-op.1975)). *See also Romero v. Journeymen Barbers, Hair Dressers, Cosmetologists and Proprietors International Union of America, Local Union No. 501, A.F. of L.–C.I.O.*, 63 N.M. 443, 321 P.2d 628 (1958); 29 U.S.C.S. § 152 (Law.Co-op.1975). This definition of "labor dispute" is consistent with the way in which other courts have defined the term in disqualifying statutes. *Buchholz; Gorecki v. State*, 115 N.H. 120, 335 A.2d 647 (1975).

An employer's lockout may be a cessation of furnishing work to employees in an effort to obtain for the employer more desirable contract terms, or the suspension of operations by an employer resulting from a dispute with his employees over wages, hours, or working conditions. *See BE–MAC Transport Co. v. Grabiec*, 20 Ill.App.3d 345, 314 N.E.2d 242 (1974). When a term is not defined by statute, we will interpret the term in accordance with its usual and ordinary meaning unless a different intent is clearly indicated. *McCurry v. City of Farmington*, 97 N.M. 728, 643 P.2d 292 (Ct.App.1982). A lockout is potentially a labor dispute, given the ordinary and usual definitions of these terms. There is no clear indication in the statute of a different intent.

Finally, New Mexico follows the general rule that the court, in construing statutory law adopted from other countries, should look to the source for definitions and interpretation. *Laughlin v. Laughlin*, 49 N.M. 20, 155 P.2d 1010 (1944). As both the *Buchholz* and *North River* courts have observed, most unemployment compensation acts, including our own, were borrowed from the original English act, and "English decisions are uniform in holding that a lockout is a labor dispute in contemplation of the national insurance acts." *North River*, 15 Wash.2d at 208–09, 130 P.2d at 66.

For these reasons, we conclude that lockouts generally fall within the labor dispute disqualification. We next consider whether our labor dispute disqualification excludes lockouts that result when negotiations have not reached an impasse.

## B. THE "IMPASSE" EXCEPTION.

ESD argues that because the term "labor dispute" is not explicitly defined by statute, we should construe the term in light of the Act's intent to protect against involuntary unemployment. Consequently, ESD would have this court inject an impasse requirement into the labor dispute determination, limiting the cases where a disqualifying lockout is found to those where an impasse in negotiations exists between the parties. *See Bootz Manufacturing Co. v. Review Board of Indiana Employment Security Division*, 143 Ind. App. 17, 237 N.E.2d 597 (1968); *National Gypsum Co. v. Administrator, Louisiana Department of Employment Security*, 313 So.2d 230 (La.), *appeal dismissed*, 423 U.S. 1009, 96 S.Ct. 439, 46 L.Ed.2d 381 (1975); *Montana Ready Mixed Concrete Association v. Board of Labor Appeals*, 175 Mont. 143, 572 P.2d 915 (1977). ESD contends that an impasse requirement is necessary to prevent employers from unilaterally and unreasonably locking out employees and gaining unfair advantage in the negotiation process. It also claims that an impasse requirement is necessary to ensure that all employees who are unem-

ployed "through no fault of their own" receive benefits.

■ We find the "impasse" requirement an inappropriate judicial insertion under well-settled rules of statutory construction. First, the disqualification provisions in Section 51–1–7 create specific exceptions to the generally declared purpose of the Act. When a statute expresses first a general intent and then an inconsistent particular intent, the latter will be construed as an exception to the former and both will stand. *North River.* To the extent that there is a conflict between the general intent of the Act to protect against involuntary unemployment and the specific disqualification of some employees who may nevertheless be involuntarily unemployed, the specific exceptions control. *See City of Alamogordo v. Walker Motor Co.*, 94 N.M. 690, 616 P.2d 403 (1980).

■ Second, ESD's argument requires that we add language to the statute excepting lockouts from qualification as disqualifying labor disputes where no impasse in negotiations exists. On appeal ESD concedes that lockouts are disqualifying labor disputes if the parties have reached an impasse in negotiations. We ought not read language into the statute where, as here, the statute makes sense as written. *Perez v. Health & Social Services*, 91 N.M. 334, 573 P.2d 689 (Ct.App.1977).

In addition, the decision to distinguish among lockouts seems to us a legislative decision, with respect to which various options are available. Several states specifically exempt lockouts or their equivalents from labor dispute disqualification in their unemployment compensation acts. Ark. Stat.Ann. § 81–1105(f) (1976 Repl.); Ky. Rev.Stat. § 341.360(1) (1983); Miss.Code Ann. § 71–5–513(5)(a) (Cum.Supp.1983); W.Va.Code § 21A–6–3(4) (Cum.Supp.1983). These statutes vary in detail. Had the legislature intended to exclude lockouts from the labor dispute disqualification provision where no impasse in negotiations had been reached, it could have easily done so. If the legislature desires to exclude lockouts, it may choose among different

models. Under these circumstances, we ought not read the impasse exception into the statute.

The impasse exception seems to require that the administrative agency or the court determine whether one party or another caused or was more responsible for the unemployment. Such a tendency would violate the policy that the state should remain neutral in labor disputes. As the New Mexico Supreme Court has stated:

> "It is one of the fundamental tenets of the unemployment compensation law that the administering agency remain neutral in the labor dispute and refrain from passing on the merits of the dispute. Courts almost unanimously hold that the merits of a labor dispute are immaterial in determining the existence of the dispute, the rationale being that the unemployment compensation fund should not be used for the purpose of financing a labor dispute any more than it should be withheld for the purpose of enabling an employer to break a strike."

*Albuquerque-Phoenix Express*, 88 N.M. at 599, 544 P.2d at 1164 (citations omitted).

In fact, the impasse exception for which ESD has argued might tend to discourage collective bargaining. An employer might be induced to reach a final position earlier in the process than otherwise, in order to prevent a finding that no impasse had occurred. We believe that the most effective method of upholding the policy of neutrality and the policy of encouraging collective bargaining under the present statute is to treat lockouts as potentially disqualifying labor disputes and to require a finding that the unemployment resulted from a labor dispute.

C. THE CAUSAL CONNECTION BETWEEN A LOCKOUT AND A LABOR DISPUTE.

■ The question of whether an employee qualifies for unemployment benefits or falls within the disqualifying labor dispute provision requires not only a determination that a labor dispute existed but also a

determination that the employee's unemployment resulted from the labor dispute. *See Smith v. Michigan Employment Security Commission,* 410 Mich. 231, 301 N.W.2d 285 (1981), *aff'd sub nom. Doerr v. Universal Engineering Division, Houdaille Industries, Inc.,* 414 Mich. 1101, 322 N.W.2d 711 (1982). Our statute requires that the employee's unemployment be "due to" a labor dispute. This language imposes a requirement of causal connection between the unemployment for which benefits are claimed and a labor dispute.

Our former statute imposed two causation requirements: (1) unemployment must have been "due to" a stoppage of work, and (2) the work stoppage must have existed "because of" a labor dispute. In amending the statute, the legislature appears to have broadened the exception by eliminating the requirement of a work stoppage and the causal connection between work stoppage and a labor dispute. The resulting exception is shorter but not necessarily simpler. It continues to require the existence of a labor dispute from which unemployment results.

The lockout is an economic weapon in the hands of the employer which is a counterpart to the employees' strike weapon. *North River.* Employees covered by federal law who are unilaterally and unreasonably locked out by their employer have a remedy under 29 U.S.C. Section 158(a) for unfair labor practices within the meaning of the National Labor Relations Act. *See American Ship Building Co. v. National Labor Relations Board,* 380 U.S. 300, 85 S.Ct. 955, 13 L.Ed.2d 855 (1965). We need not decide whether our disqualification provision would encompass a lockout that represented an unfair labor practice. In this case the employees filed an unfair labor practice charge against Wellborn, which the National Labor Relations Board ultimately dismissed.

The trial court's findings and conclusions evidence a concern that an interpretation of the statutory term "labor dispute" that includes lockouts and does not recognize an impasse exception permits unilateral and unreasonable conduct by the employer. We respect that concern, but we believe the federal statute provides significant protection against such conduct.

Further, our statute requires more than a determination that a lockout occurred. The statute stipulates that the disqualifying event is unemployment due to a labor dispute. The phrase requires a determination that the unemployment arose because of a labor dispute. In the context of a lockout, the phrase requires a causal connection between the employer's decision and a controversy relating to terms or conditions of employment. *See Pomonis.*

## II. WELLBORN'S LOCKOUT AS CAUSALLY CONNECTED TO A LABOR DISPUTE.

The trial court did not make an express finding on this issue. However, based on the findings of fact made by the district court, we conclude that the unemployment was due to a labor dispute. The employer's decision to institute a lockout was made as a result of a controversy relating to terms and conditions of employment.

Wellborn and its employees, having engaged in collective bargaining, were in disagreement over wage terms for a new contract. Although the employees were willing to work without a contract, Wellborn was not willing to operate under those terms. Thus, the parties were in disagreement over terms and conditions of employment, and a labor dispute existed.

Wellborn locked out its employees after the expiration of the existing contract. At that point a labor dispute existed. There was substantial evidence that the employer's decision represented a response to the parties' failure to agree on terms and conditions of employment. There was no evidence of improper motive.

Under these circumstances, the lockout by Wellborn had a sufficient causal connection to a labor dispute. The employees' "unemployment [was] due to a labor dispute."

We reverse the trial court as to its interpretation of the scope of the statutory term "labor dispute." The case is remanded to the district court so that it may enter an order requiring the ESD to relieve Wellborn's unemployment compensation account from any charges attributable to payments made to Wellborn's employees.

IT IS SO ORDERED.

DONNELLY, C.J., and NEAL, J., concur.