This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-41890**

**JAMIE SILVA-STEELE,**

     Plaintiff-Appellee,

v.

**ADRIENNE ENGHOUSE,**

     Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Daniel E. Ramczyk, District Court Judge**

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Linda M. Vanzi
Edward Ricco
Albuquerque, NM

for Appellee

Youtz & Valdez, P.C.
Shane C. Youtz
Stephen Curtice
James A. Montalbano
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**ATTREP, Judge.**

**{1}** Defendant Adrienne Enghouse appeals a district court order permanently enjoining her from entering Plaintiff Jamie Silva-Steele's private, residential property. Silva-Steele initiated this case after Enghouse left a flyer, related to unionization efforts, at Silva-Steele's residence. On appeal, Enghouse contends the district court's injunction

runs afoul of certain labor laws and the First Amendment to the United States Constitution. We affirm.

## BACKGROUND

**{2}** We rely on undisputed procedural facts, as well as the facts found by the district court.[1] Before the incident giving rise to the injunction, Enghouse was attempting to unionize the employees of a hospital at which Silva-Steele serves as president and CEO. As part of her organizing activities, Enghouse leafleted Silva-Steele's neighborhood with informational flyers, leaving one at Silva-Steele's front door.[2] In response, Silva-Steele filed a verified application for a restraining order in district court. Silva-Steele alleged in the application that Enghouse had "crossed the line by showing up at [her] house, and leaving . . . propaganda behind," causing her to "fear for [her] safety and the safety of [her] family." In relevant part, Silva-Steele asked the district court to order Enghouse to stay away from her home. The district court denied Silva-Steele's request for a temporary restraining order, but set a hearing on her request for a preliminary injunction.

**{3}** After the hearing, at which Silva-Steele, Enghouse, and a union regional director testified, the district court issued a preliminary injunction and entered factual findings and legal conclusions. In relevant part, the district court found: "In numerous instances during the hearing, . . . Enghouse, her attorney, and [the union regional director] stated that they believe that . . . Enghouse can enter . . . Silva-Steele's family property even though . . . Silva-Steele has expressly denied her permission to do so. These individuals believe (incorrectly) that . . . Enghouse is immune from criminal prosecution for criminal trespass on private property if she is engaged in union activity."

**{4}** Three months later, the district court held a hearing to determine whether to make the injunction permanent. Counsel for Enghouse admitted that Enghouse would be committing criminal trespass if she reentered Silva-Steele's property. Nevertheless, Enghouse, through counsel, refused to agree not to enter Silva-Steele's property in the future. After the hearing, the district court issued a permanent injunction and entered factual findings and legal conclusions.[3] The court found, "Enghouse again refused to acknowledge that the criminal trespass laws prohibit her from entering . . . Silva-Steele's

---

1Because Enghouse has not challenged any of the district court's factual findings, they are binding on appeal. *See Kruskal v. Moss*, 1998-NMCA-073, ¶ 17, 125 N.M. 262, 960 P.2d 350 (providing that unchallenged findings are binding on appeal); *see also Maloof v. San Juan Cnty. Valuation Protests Bd.*, 1992-NMCA-127, ¶ 18, 114 N.M. 755, 845 P.2d 849 (providing that the predecessor to Rule 12-318(A)(3) NMRA "imposes a duty upon an appellant, who seeks to challenge findings adopted below, to marshal all of the evidence in support of the findings and then demonstrate that even if the evidence is viewed in a light most favorable to the decision reached below, together with all reasonable inferences attendant thereto, the evidence is insufficient to support the findings"); Rule 12-318(A)(4) (requiring a "specific attack on any finding, or the finding shall be deemed conclusive").

2There does not appear to be any dispute that, because Silva-Steele's property was unposted at that time, Enghouse did not trespass on Silva-Steele's property when she left the flyer. The next day, however, Silva-Steele posted non-solicitation signs at her residence.

3The permanent injunction incorporated by reference the factual findings and legal conclusions from the preliminary injunction and Silva-Steele's supplemental proposed findings of fact and conclusions of law.

property and testified that she intended to return to the property in the future." The court concluded, "Immediate and irreparable harm will result from . . . Enghouse's actions unless she is permanently restrained and enjoined from entering . . . Silva-Steele's private residential property." The district court thus permanently enjoined "Enghouse from entering the private property of . . . Silva-Steele for any purpose." Enghouse appeals. We reserve discussion of further factual detail for our analysis of the issues.

## DISCUSSION

**{5}** Enghouse first argues that this case constitutes a "labor dispute" within the meaning of the Anti-Injunction Act, NMSA 1978, §§ 50-3-1 to -2 (1939),[4] and that the district court lacked jurisdiction to enter the injunction because it failed to make certain findings required by the Anti-Injunction Act. Alternatively, Enghouse contends the district court erred because the injunction is contrary to the First Amendment and the Public Employee Bargaining Act (PEBA), NMSA 1978, §§ 10-7E-1 to -25 (2003, as amended through 2020). We address these arguments in turn.

## I.  The Anti-Injunction Act

**{6}** The Anti-Injunction Act provides, "No court . . . shall have jurisdiction to issue a permanent injunction . . . in any case involving or growing out of a labor dispute, within the state," except after making certain findings:

A.  that unlawful acts have been threatened or committed and will be executed or continued unless restrained;

B.  that substantial and irreparable injury to complainant's property will follow unless the relief requested is granted; [and]

C.  that complainant has no adequate remedy at law.

Section 50-3-1.[5] Enghouse contends that this case "involves or grows out of a labor dispute," *see id.*, and that the district court failed to make the requisite findings under the Anti-Injunction Act. *See generally Pomonis v. Hotel, Rest. & Bartenders Union, Loc. Union No. 716*, 1952-NMSC-010, ¶¶ 11-19, 56 N.M. 56, 239 P.2d 1003 (addressing the meaning of the term "labor dispute" in the Anti-Injunction Act). Silva-Steele responds that there was "no 'labor dispute' here that falls within the reach of the [A]nti-[I]njunction [Act]" because the activity sought to be enjoined—criminal trespass on Silva-Steele's private residence—is "in contravention of the public policy of the state." *See id.* ¶ 19 (providing that, in analyzing a controversy under the Anti-Injunction Act, the fact-finder

---

4New Mexico's Anti-Injunction Act was modeled after the federal Norris-LaGuardia Act, 29 U.S.C. §§ 101-115, and is sometimes referred to as the "little Norris-LaGuardia Act." *See Pomonis v. Hotel, Rest. & Bartenders Union, Loc. Union No. 716*, 1952-NMSC-010, ¶ 11, 56 N.M. 56, 239 P.2d 1003; *City of Albuquerque v. Campos*, 1974-NMSC-065, ¶ 19, 86 N.M. 488, 525 P.2d 848.

5The Anti-Injunction Act additionally requires that the court hear sworn testimony of witnesses in open court prior to issuing an injunction. Section 50-3-1. Prior to issuance of the permanent injunction in this case, the district court held two hearings at which the sworn testimony of witnesses was taken.

must determine that "the collective bargaining activities are in furtherance of some legitimate interest of labor and not in contravention of the public policy of the state"). It, however, is unnecessary for us to resolve the parties' disagreement about whether this case constitutes a "labor dispute" within the meaning of the Anti-Injunction Act because, even assuming it does, we disagree with Enghouse that the district court failed to make the requisite findings. We explain.

**{7}**     The first required finding under the Anti-Injunction Act is that "unlawful acts have been threatened or committed and will be executed or continued unless restrained." Section 50-3-1(A). Enghouse does not dispute that the district court made the required findings on this point. The district court made the following relevant findings. Silva-Steele sent "an email to . . . Enghouse telling her that she was not welcome on the property and that any further attempt to do so would be considered a trespass, [and] Silva-Steele and her husband . . . posted non-solicitation signs at their residence." Notwithstanding Silva-Steele's actions, "Enghouse refuses to stay away from . . . Silva-Steele's family home, has stated again that she intends to go back there and that she has a right to do so. In other words, she plans to intentionally trespass on . . . Silva-Steele's personal family residence in the future." It is a crime in New Mexico to "knowingly enter[] or remain[] upon the unposted lands of another knowing that such consent to enter or remain is denied or withdrawn by the owner or occupant thereof." NMSA 1978, § 30-14-1(B) (1995); *see also* § 30-14-1(A) (defining trespass on posted lands). In light of Enghouse's intent to commit criminal trespass of Silva-Steele's property, as found by the district court, Subsection 50-3-1(A) of the Anti-Injunction Act is plainly met.

**{8}**     The second required finding under the Anti-Injunction Act is that "substantial and irreparable injury to [the] complainant's property will follow unless the relief requested is granted." Section 50-3-1(B). On this point, Enghouse contends Silva-Steele did not "allege that leaving a flyer on her door in the future would cause 'substantial and irreparable injury' to her property," "[n]or did the [d]istrict [c]ourt so find." We disagree with Enghouse's narrow characterization of the injury in this case, *cf. Kaywal, Inc. v. Avangrid Renewables, LLC*, 2021-NMCA-037, ¶ 18, 495 P.3d 550 (describing trespass claims as "suits for injury to land"), given the district court's numerous findings and conclusions relevant to Subsection 50-3-1(B):

> The interest to be protected is . . . Silva-Steele and her family's right to the legitimate and private use and enjoyment of their home, and to be free from unwanted intrusions by . . . Enghouse.

> New Mexico's recognition that a citizen has the right to be free from unwarranted intrusions onto private property is further embodied in its criminal trespass statute.

> [A] trespass is an unauthorized entry onto another's property that disrupts the property owner's exclusive possession of the property. . . . Enghouse intends to trespass on . . . Silva-Steele's property in the future even

though permission has been expressly denied and non-solicitation signs have been posted.

Silva-Steele and her family have the right to be free from interference and harassment by . . . Enghouse, and to the fully protected use and enjoyment of their home.

[There is an] ongoing threat that [Enghouse] will criminally trespass onto [Silva-Steele's] residential property should she desire to do so.

The injury with which . . . Silva-Steele is threatened is irreparable.

Immediate and irreparable harm will result from . . . Enghouse's actions unless she is permanently restrained and enjoined from entering . . . Silva-Steele's private residential property.

In sum, the district court determined that Enghouse's ongoing threat of criminal trespass amounted to an injury to Silva-Steele's private residential property—specifically, the use and enjoyment of her home and the right to exclude others—that was irreparable absent an injunction. *See McNeill v. Rice Eng'g & Operating, Inc.*, 2010-NMSC-015, ¶ 1, 148 N.M. 16, 229 P.3d 489 (providing that an action for trespass to real property asserts an "injury to the right of possession"); *Kaywal, Inc.*, 2021-NMCA-037, ¶ 34 (providing that an "irreparable harm" exists where "the trespass is continuous or likely to recur in a serial manner").

**{9}** Enghouse mounts no attack on the district court's finding that Enghouse poses an ongoing threat of criminal trespass on Silva-Steele's property, making it binding on appeal. *See Kruskal v. Moss*, 1998-NMCA-073, ¶ 17, 125 N.M. 262, 960 P.2d 350; *Maloof v. San Juan Cnty. Valuation Protests Bd.*, 1992-NMCA-127, ¶ 18, 114 N.M. 755, 845 P.2d 849; Rule 12-318(A)(3), (4) NMRA. Nor does Enghouse challenge the court's conclusion that Enghouse's threatened criminal trespass amounts to an irreparable injury to Silva-Steele's property warranting injunctive relief. *See Hall v. City of Carlsbad*, 2023-NMCA-042, ¶ 5, 531 P.3d 642 (providing that, "[o]n appeal, there is a presumption of correctness in the rulings and decisions of the district court," and thus "it is the appellant's burden to persuade us that the district court erred" (internal quotation marks and citation omitted)); *see also Kaywal, Inc.*, 2021-NMCA-037, ¶ 34; *Stroup v. Frank A. Hubbell Co.*, 1920-NMSC-078, ¶¶ 2-5, 27 N.M. 35, 192 P. 519 (upholding an injunction on the basis that repeated acts of trespassing constitutes an irreparable injury). In light of these unchallenged findings and conclusions, Subsection 50-3-1(B) of the Anti-Injunction Act is met.

**{10}** The third required finding under the Anti-Injunction Act is that "[the] complainant has no adequate remedy at law." Section 50-3-1(C). Related to this point, the district court made several findings and conclusions:

Silva-Steele is not seeking monetary damages but only wants to stop the unwarranted interference of her right to the use and possession of her private residential property. Recovery of monetary damages would be wholly inadequate in this case and would only lead to a multiplicity of lawsuits out of repeated acts of trespass by . . . Enghouse.

Because . . . Enghouse has announced her intention to continue to trespass on . . . Silva-Steele's private property in the future, equity must interfere and grant relief.

New Mexico courts have long held that injunctions are warranted when a defendant threatens repeated trespasses which would necessarily involve plaintiff in a multiplicity of suits. . . . Therefore, injunctive relief is appropriate.

Neither money nor criminal penalties can fully redress the rights that . . . Silva-Steele seeks to protect. There is no adequate remedy at law unless injunctive relief is granted.

Silva-Steele has suffered and will continue to suffer an irreparable injury for which there is no adequate remedy at law.

Enghouse—for good reason—makes no contention that threats of repeated trespass can be remedied by damages or are otherwise insufficient to support the issuance of an injunction. *See, e.g.*, *Kennedy v. Bond*, 1969-NMSC-119, ¶ 17, 80 N.M. 734, 460 P.2d 809 ("If an interference [to a property right] is of a continuous nature, the constant recurrence of which renders a remedy at law inadequate, [due to] a multiplicity of suits, then a sufficient ground for relief by injunction is afforded."); *Stroup*, 1920-NMSC-078, ¶ 2 (rejecting the argument that there was an adequate remedy at law where the "trespass [was] of a continuing nature, the constant recurrence of which renders the remedy at law inadequate, unless by multiplicity of suits, and this affords sufficient ground for relief by injunction").

**{11}** Instead, Enghouse argues that the Public Employee Labor Relations Board (PELRB) had "primary jurisdiction" over the district court. In support, Enghouse cites NMSA 1978, Section 10-7E-9(F) (2020), which provides, in relevant part, that the PELRB "has the power to enforce provisions of the [PEBA] through . . . injunctive relief." Enghouse, however, does not explain how or why the PELRB would have had primary jurisdiction over the dispute here, and consequently we need not consider this contention further. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 ("We will not review unclear arguments, or guess at what [a party's] arguments might be."). *See generally State ex rel. Norvell v. Arizona Pub. Serv. Co.*, 1973-NMSC-051, ¶ 31, 85 N.M. 165, 510 P.2d 98 (explaining under what circumstances "primary jurisdiction" applies). Further, whether the PELRB itself could have issued the *equitable* remedy of an injunction (an issue we need not resolve) says nothing about whether Silva-Steele had an adequate remedy *at law. See State ex rel.*

*State Highway & Transp. Dep't of N.M. v. City of Sunland Park*, 2000-NMCA-044, ¶ 18, 129 N.M. 151, 3 P.3d 128 (providing that injunctive relief is available when there is no adequate and complete remedy at law); *Wilcox v. Timberon Protective Ass'n*, 1990-NMCA-137, ¶ 34, 111 N.M. 478, 806 P.2d 1068 (providing that "where the character of the property is intact, legal remedies are inadequate, since damages due to loss of quiet enjoyment are incalculable"), *abrogated on other grounds by Agua Fria v. Rowe*, 2011-NMCA-054, ¶ 22, 149 N.M. 812, 255 P.3d 390. Simply put, Enghouse's argument about the PELRB's primary jurisdiction does nothing to convince us the district court's conclusion that "there is no adequate remedy at law"—a determination plainly adequate under Subsection 50-3-1(C) of the Anti-Injunction Act—was erroneous.

**{12}** For these reasons, we reject Enghouse's arguments pertaining to the Anti-Injunction Act.[6]

## II.     The First Amendment and PEBA

**{13}** Enghouse alternatively argues that the district court erred in entering the injunction on the grounds that it "amounts to a prior restraint of speech that is protected by the First Amendment" and prevents her from engaging in activity allowed by PEBA. We are not persuaded. *See Hall*, 2023-NMCA-042, ¶ 5; *Premier Tr. of Nev., Inc. v. City of Albuquerque*, 2021-NMCA-004, ¶ 10, 482 P.3d 1261 (providing that "it is the appellant's burden to demonstrate, by providing well-supported and clear arguments, that the district court has erred").

**{14}** Regarding the First Amendment, Enghouse simply cites federal case law for the general proposition that "peaceful pamphleteering" is constitutionally protected. Although Enghouse's general contention is unobjectionable, it is not helpful to her. As Silva-Steele notes, Enghouse "fails to recognize that the constitutional balance weighs differently in circumstances involving the delivery of otherwise protected speech to an unwilling recipient in the recipient's own home." *Cf. Rowan v. U.S. Post Off. Dep't*, 397 U.S. 728, 735-40 (1970) (concluding that the First Amendment does not protect a right to force unwanted speech, through mailers, into a person's home). Enghouse does not respond to this point, nor does she otherwise explain how the prohibition against distributing leaflets at Silva-Steele's private residence, after permission has been expressly denied, amounts to a First Amendment violation. *See Delta Automatic Sys., Inc. v. Bingham*, 1999-NMCA-029, ¶ 31, 126 N.M. 717, 974 P.2d 1174 (providing that when an appellant does not respond to arguments made in an answer brief, "such a failure to respond constitutes a concession on the matter" and "[t]his Court has no duty

---

[6]Enghouse additionally contends that the district court committed "clear error harming [her]" by not complying with Section 50-3-2. This provision provides that a court may not issue a temporary restraining order or a temporary injunction without first requiring the complainant to post "adequate security." Section 50-3-2. The purpose of the security is "to recompense those enjoined for any loss, expense or damage caused by the improvident or erroneous issuance of such order or injunction." *Id.* Because the district court did not improvidently or erroneously enter the preliminary injunction, Enghouse suffered no harm from the court's failure to order a security. We accordingly do not address this issue further. *See Kennedy v. Dexter Consol. Schs.*, 2000-NMSC-025, ¶ 26, 129 N.M. 436, 10 P.3d 115 (providing that in civil litigation, an error is only grounds for reversal if it is prejudicial or harmful).

to search the record or research the law to 'defend' in a civil case a party that fails to defend itself on an issue"); *Headley*, 2005-NMCA-045, ¶ 15. We accordingly do not consider this issue further.

**{15}**   Regarding PEBA, Enghouse notes that this act specifically prohibits employees from "picket[ing] homes or private businesses of elected officials or public employees," § 10-7E-20(F), but is silent about the "pamphleteering" or "handbilling" of a home. From this, Enghouse deduces, the district court "effectively made illegal something not illegal under PEBA and, given the First Amendment implications, was surely meant to remain legal." We are not convinced. As Silva-Steele aptly observes, "there is no good reason to believe that PEBA's failure to address . . . conduct that the Legislature has declared to be a criminal offense . . . indicates that the Legislature intended such conduct to remain legal." Enghouse does not respond to this point, nor does she otherwise explain how PEBA's silence evinces the Legislature's intent to permit employees to engage in criminal activity as part of their collective bargaining activities. *See Delta Automatic Sys., Inc.*, 1999-NMCA-029, ¶ 31; *Headley*, 2005-NMCA-045, ¶ 15. We accordingly do not consider this issue further.

**{16}**   For these reasons, we reject Enghouse's arguments that the injunction contravened the First Amendment and PEBA.

**CONCLUSION**

**{17}**   We affirm.

**{18}   IT IS SO ORDERED.**

**JENNIFER L. ATTREP, Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**KATHERINE A. WRAY, Judge**