**Certiorari Denied, February 15, 2016, No. S-1-SC-35709**

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: 2016-NMCA-023**

**Filing Date: December 23, 2015**

**Docket No. 33,725**

**RUTH E. DILLS,**

      **Plaintiff-Appellant,**

**v.**

**NEW MEXICO HEART INSTITUTE, P.A.,**

      **Defendant-Appellee.**

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Sarah M. Singleton, District Judge**

The Davis Law Firm, LLC
Ben Davis
Albuquerque, NM

Davis, Gilchrist & Lee, P.C.
Bryan J. Davis
Albuquerque, NM

for Appellant

Keleher & McLeod, P.A.
Thomas C. Bird
Kathleen M. Wilson
Mary Behm
Cassandra R. Malone
Albuquerque, NM

for Appellee

## OPINION

**WECHSLER, Judge.**

**{1}**    The opinion filed in this case on November 23, 2015 is hereby withdrawn and the following substituted therefor. Plaintiff's motion for rehearing is denied.

**{2}**    In this medical malpractice case, we consider the propriety of the district court's jury instruction concerning the obligation of a doctor to inform a patient of treatment alternatives. We hold that, under the facts of this case, the district court did not err by instructing the jury that a "doctor has no duty to discuss alternatives to and risks of treatment which the doctor can reasonably expect to be known to the patient." Accordingly, we affirm.

**BACKGROUND**

**{3}**    Plaintiff Ruth E. Dills had a history of tachybrady syndrome for which she received a pacemaker, with implanted leads, in 1996. She received a new pacemaker, manufactured by Medtronics, in 2006. Plaintiff went to the emergency department of the Heart Hospital in Albuquerque, New Mexico on February 10, 2009 with a fractured lead placement. The following day, she met with Dr. Kathleen Blake at the New Mexico Heart Institute who recommended that Plaintiff have her pacemaker leads extracted and the generator replaced. Dr. Blake explained to Plaintiff the risks and benefits of the lead extraction procedure. On February 20, 2009, Plaintiff met with Dr. Luis Constantin who was to perform the procedure that day with Dr. Blake's assistance. For reasons unrelated to this case, the procedure was rescheduled and performed on March 4, 2009. Plaintiff was discharged on March 6, 2009. She returned to the Heart Hospital emergency department three days later and was diagnosed with tricuspid valve regurgitation, atrial fibrillation, and right-sided congestive heart failure. She was admitted to the hospital in May 2009 and various procedures were performed, including open heart surgery to repair the torn tricuspid valve and other repairs to correct heart defects caused by her underlying heart disease process.

**{4}**    Plaintiff brought this action against Defendant, which operates the Heart Hospital, alleging the medical malpractice of Defendant's doctors and agents, Dr. Blake and Dr. Constantin. Plaintiff originally named Dr. Blake and Dr. Constantin as defendants, but, for reasons not related to this appeal, the claims against Dr. Constantin were dismissed, and Dr. Blake was granted summary judgment with respect to the claims against her.

**{5}**    The gravamen of Plaintiff's action, as relevant to this appeal, was that she was not informed of alternative procedures to the lead extraction procedure and that the lead extraction procedure was not indicated under the circumstances. In this regard, Plaintiff maintained, among other things, that when she went to the Heart Hospital emergency department on February 10, 2009, checking by the Medtronics representative only indicated that one of the two pacemaker leads was malfunctioning and leaking current, not that the leads needed to be changed, and that checking the pacemaker again on the following day also did not confirm the need for lead replacement. Plaintiff further maintained that Dr. Blake did not inform Plaintiff of alternative courses of action, including "reprogramming the

2

pacemaker to unipolar mode and capping and abandoning the existing leads and implanting new ones" and that Dr. Constantin also "did not provide Plaintiff with information regarding alternatives to [pacemaker] lead extraction." Plaintiff contended, among other things, that Dr. Constantin damaged a leaflet on her tricuspid valve during the lead extraction procedure and that she developed severe pain from the pacemaker pocket Dr. Constantin made to implant an antibiotic pouch.

{6}     At trial, two issues were presented to the jury: whether Dr. Constantin failed to offer and inform Plaintiff of alternatives to pacemaker lead extraction and whether Dr. Constantin performed a medical procedure, the lead extraction, that was not reasonably necessary for Plaintiff's condition. The jury returned a verdict for Defendant. Plaintiff appealed from the district court's judgment. On appeal, this Court decided Plaintiff's appeal in part by memorandum opinion on the summary calendar and assigned to the general calendar the single issue of whether the district court correctly instructed the jury concerning the law of informed consent.

**FACTUAL BASIS UNDERLYING THE JURY INSTRUCTION**

{7}     While Plaintiff contended that neither Dr. Blake nor Dr. Constantin informed her of treatment alternatives to lead replacement, Defendant offered the testimony of the doctors at trial in support of its position that Plaintiff had been informed of treatment alternatives. Because Plaintiff did not originally designate trial transcripts for review on appeal, Defendant provided with its answer brief a transcript of the testimony of Dr. Blake in which she discussed her receipt of Plaintiff's informed consent. *See* Rule 12-211(E) NMRA ("Each appellant shall be responsible for the timely preparation and filing of the transcript of proceedings."). Defendant also referred to portions of Dr. Constantin's deposition that Plaintiff discussed in her brief in chief on appeal. By way of motion, Plaintiff was permitted to supplement the record on appeal at the time of her reply brief with transcripts of Plaintiff's trial testimony and the trial testimony of Dr. Constantin that was presented as part of Plaintiff's case. Plaintiff did not, however, supplement the record with Dr. Constantin's trial testimony when he was called as a witness during Defendant's case.[1]

{8}     Dr. Blake testified that she did not have an independent recollection of her conversation about informed consent with Plaintiff that had occurred seven years earlier. She testified, however, that she had obtained informed consent for a medical procedure from

---

[1]In his reply brief, Plaintiff did not address Dr. Constantin's deposition testimony discussed by Defendant in its answer brief or Dr. Constantin's testimony as part of Defendant's case at trial. *See Delta Automatic Sys. Inc. v. Bingham*, 1999-NMCA-029, ¶ 31, 126 N.M. 717, 974 P.2d 1174 (treating the failure of reply brief to respond to an issue specifically addressed in answer brief as a concession); *Anderson v. Jenkins Constr. Co.*, 1971-NMCA-119, ¶ 3, 83 N.M. 47, 487 P.2d 1352 (accepting statements made in answer brief as true when they were not controverted or disputed in reply brief).

patients approximately 8,000 to 10,000 times and that she followed the same typical format to do so. She testified that she would routinely "talk about what the problem is and what the alternatives are for treating that problem and what the risks are for those alternatives, [and] what the benefits are." She would have given Plaintiff three treatment options: (1) not to have taken any action and leaving the pacemaker programmed as it was, (2) surgically replacing the pacemaker ventricular lead, and (3) surgically extracting both leads and replacing them with new ones.

**{9}** Dr. Blake's summary in her notes reflects that she discussed with Plaintiff "the need for lead extraction" and advised "that both leads be removed because we may otherwise be back in a short time from now to deal with an old worn-out lead." The notes further state, "all questions answered, good understanding confirmed, and she agrees to proceed next week with me and Dr. Constantin." Dr. Blake also testified that when she concluded her discussion with Plaintiff, she believed that she had "a full and thorough informed consent discussion with her." She did not expect that Dr. Constantin "would then redo or do again another full informed consent discussion" because Plaintiff was Dr. Blake's patient, with whom she had established a long-term relationship, and Dr. Blake was making the recommendation. In his deposition, Dr. Constantin testified that when he offered to discuss the procedure with Plaintiff, at which time he also intended to discuss alternatives, Plaintiff "indicated that she had already had a discussion with Dr. Blake and that she was very comfortable . . . with the fact that I was doing the procedure on the recommendation of Dr. Blake."

## PROPRIETY OF THE JURY INSTRUCTION

**{10}** Our Supreme Court in *Gerety v. Demers*, 1978-NMSC-097, 92 N.M. 396, 589 P.2d 180, discussed in detail the law on informed consent in medical malpractice lawsuits. The Court explained that when a cause of action is in negligence—as opposed to battery—the physician has the obligation to obtain the patient's informed consent and also to communicate to a patient information concerning "the inherent and potential hazards of the proposed treatment, the alternatives to that treatment, if any, and the results likely if the patient remains untreated." *Id.* ¶ 65 (quoting *Canterbury v. Spence*, 464 F.2d 772, 787-88 (D.C. Cir. 1972)). Our jury instructions concerning informed consent and duty to inform are consistent with *Gerety*. Relevant here, the duty to inform instruction, UJI 13-1104B NMRA, states:

In treating [his] [her] patient, a doctor is under the duty to communicate to the patient [, or to the patient's representative when the patient is a minor or is incapacitated,] that information which a reasonably prudent patient under similar circumstances would need to know about:

1. the patient's condition; [and]

2. the alternatives for treatment; [and]

4

3.　　the inherent and potential hazards of the proposed
　　　　　　treatment; [and]

　　　4.　　the likely result if the condition remains untreated.

　　　　　The duty to inform does not require a doctor to discuss with [his]
　　　[her] patient every risk of proposed treatment no matter how small or remote.
　　　[A doctor has no duty to discuss risks which the doctor can reasonably expect
　　　to be obvious or known to the patient.]

UJI 13-1104B (alterations in original).

**{11}** The Use Note to UJI 13-1104B further instructs that the bracketed sentence in the second paragraph "should not be used unless the jury could find that the information which the patient contends was not disclosed is information which the patient already knew or is a matter of common understanding."

**{12}** The district court in this case modified the above instruction to read as follows:

　　　　　In treating his patient, Dr. Constantin[] is under the duty to
　　　communicate to [Plaintiff] that information which a reasonably prudent
　　　patient under similar circumstances would need to know about:

　　　1.　　the alternatives for treatment; and

　　　2.　　the likely result if the lead condition remained untreated.

　　　　　A doctor has no duty to discuss alternatives to and risks of treatment
　　　which the doctor can reasonably expect to be known to the patient.

On appeal, Plaintiff contends that the district court erred as a matter of law in giving the modified instruction because the bracketed sentence only applies to the "inherent and potential hazards of the proposed treatment" as stated in UJI 13-1104B(3) and not to the "alternatives for treatment" set forth in UJI 13-1104B(2).

**{13}** We review de novo the district court's instruction to the jury. *See Benavidez v. City of Gallup*, 2007-NMSC-026, ¶ 19, 141 N.M. 808, 161 P.3d 853 ("We review jury instructions de novo to determine whether they correctly state the law and are supported by the evidence introduced at trial." (internal quotation marks and citation omitted)).[2]

_____

　　　[2]Rule 1-051(D) NMRA requires the use of an applicable uniform jury instruction "unless under the facts or circumstances of the particular case the published UJI Civil is erroneous or otherwise improper, and the trial court so finds and states of record its reasons." Plaintiff does not argue that the district court did not follow Rule 1-051(D). Because we do

**{14}** We do not read *Gerety* or UJI 13-1104B in the limited manner Plaintiff urges. To the contrary, the language of *Gerety*, adopted from *Canterbury*, indicates a flexibility that depends on a rule of reason and the particular circumstances.

> The scope of the standard is not subjective as to either the physician or the patient; it remains objective with due regard for the patient's informational needs and with suitable leeway for the physician's situation.
>
> . . . .
>
> There is no bright line separating the significant from the insignificant; the answer in any case must abide a rule of reason. Some dangers—infection, for example—are inherent in any operation; there is no obligation to communicate those of which persons of average sophistication are aware. Even more clearly, the physician bears no responsibility for discussion of hazards the patient has already discovered, or those having no apparent materiality to patients' decision on therapy. . . . Whenever non-disclosure of particular risk information is open to debate by reasonable-minded men, the issue is for the finder of the facts.

*Gerety*, 1978-NMSC-097, ¶ 65 (internal quotation marks and citation omitted).

**{15}** Under Defendant's theory of this case, Plaintiff's approach would require, as a matter of law, that a doctor provide information to a patient that the patient not only already had been provided but that the patient indicated that she did not wish to receive. The doctor would have this burden, according to Plaintiff, because the information related to alternative treatment rather than the risks of a procedure. Plaintiff finds rationale in such a distinction because alternatives to treatment are not likely known to the general public. However, the knowledge of the general public is not the issue; it is whether the doctor can reasonably expect that the information is either obvious to or known by the patient. *See* UJI 13-1104B. There is no clear distinction between alternative treatment and treatment risks in this regard.

**{16}** A party is entitled to a jury instruction on the party's theory of the case if it is supported by the evidence. *Benavidez*, 2007-NMSC-026, ¶ 19. From the limited record of the trial that we have before us in this appeal, it appears that Defendant presented evidence that Dr. Blake provided informed consent to Plaintiff that included alternatives to treatment. Under Plaintiff's position, the jury would not address whether Dr. Constantin, on behalf of Defendant, acted reasonably in his communication with Plaintiff. This reading of exceptions to disclosure discussed in *Gerety* is overly restrictive. Rather, we read *Gerety* as embracing

---

not have a complete trial transcript on appeal, we cannot determine the manner in which the district court addressed Rule 1-051(D) or even whether it considered it necessary to do so. It is not an issue in this appeal.

an approach based on reasonableness and the particular circumstances of the doctor-patient relationship. The district court did not err by instructing the jury in this manner.

**CONCLUSION**

**{17}** The district court did not err in its jury instruction concerning Dr. Constantin's duty to discuss alternatives to treatment with Plaintiff. We affirm the district court's judgment on the jury verdict in favor of Defendant.

**{18}** **IT IS SO ORDERED.**

_____

**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____

**LINDA M. VANZI, Judge**

_____

**M. MONICA ZAMORA, Judge**