This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

No. A-1-CA-39001

**RODOLFO BARROZO, JR.,**

Worker-Appellant,

v.

**ALBERTSON'S, INC. and
ACE AMERICAN INSURANCE
COMPANY,**

Employer/Insurer-Appellees.

**APPEAL FROM THE WORKERS' COMPENSATION ADMINISTRATION**
**Shanon S. Riley, Workers' Compensation Judge**

Gerald A. Hanrahan
Albuquerque, NM

for Appellant

Butt, Thornton & Baehr, P.C.
Neysa E. Lujan
Sarah S. Shore
Albuquerque, NM

for Appellees

**MEMORANDUM OPINION**

**ATTREP, Judge.**

**{1}**    Worker Rodolfo Barrozo, Jr. appeals the workers' compensation judge's (WCJ) denial of his request for full reimbursement of out-of-pocket costs for medical cannabis used in connection with his work-related injury. Because Worker has not persuaded us of error, we affirm.

**BACKGROUND**

**{2}**     The facts relevant to this appeal are largely undisputed. Worker suffered a work-related injury to his wrists and elbows and was awarded employer-paid benefits, including ongoing medical care. Worker qualified for medical cannabis pursuant to the Lynn and Erin Compassionate Use Act, NMSA 1978, §§ 26-2B-1 to -10 (2007, as amended through 2021), and such treatment was deemed reasonable and necessary. Worker bought a certain quantity of medical cannabis for $453.05 and sought reimbursement from Worker's employer, Albertson's, Inc., through its workers' compensation insurer, Ace American Insurance Company, (collectively, Employer/Insurer). Employer/Insurer reimbursed Worker $108.18,[1] the amount allowed under the health care provider fee schedule established by the Workers' Compensation Administration pursuant to NMSA 1978, Section 52-4-5(A) (1993) and 11.4.7.9(D) NMAC of the administrative code.[2]

**{3}**     Worker filed a request with the Administration seeking the difference between the amount he paid for the medical cannabis and the amount he was reimbursed. After hearing argument on the matter, the WCJ denied the request, agreeing with Employer/Insurer that Worker was entitled to reimbursement only up to the maximum allowable payment as provided in the fee schedule. Worker appeals that determination.

**DISCUSSION**

**{4}**     Worker's main argument on appeal is that NMSA 1978, Section 52-1-49(A) (1990) of the Workers' Compensation Act (the Act), NMSA 1978, §§ 52-1-1 to -70 (1929, as amended through 2017)—which obligates employers to provide their workers with health care services following work-related injuries—entitles Worker to full reimbursement of his out-of-pocket medical cannabis expenses. As a corollary to this argument, Worker also contends that 11.4.7.9(D) NMAC and the fee schedule—which establish the maximum allowable payment for medical cannabis—are in conflict with Section 52-1-49(A)'s purported requirement of full reimbursement. Finally, Worker contends that 11.4.7.9(D) NMAC is inapplicable to his case because it was promulgated after the date of his work-related injury.

**I.      Worker Does Not Persuade Us That Section 52-1-49(A) Requires Full Reimbursement of His Out-of-Pocket Medical Cannabis Costs**

**{5}**     Worker's first argument "raises a question of interpretation of the Act," which is reviewed de novo. *Vialpando v. Ben's Auto. Servs.*, 2014-NMCA-084, ¶ 5, 331 P.3d

---

1Employer/Insurer notes in its answer brief that it originally miscalculated what Worker was owed and paid him only $36.06, but later corrected its mistake by paying him $72.12 more, for a total of $108.18. We accept Employer/Insurer's statement as true only because Worker does not dispute it and because, as an amount still less than what Worker requested, it does not change our analysis.

2The health care provider fee schedule sets the maximum allowable payment for certain health care services, including medical cannabis. *See* 11.4.7.9(D)(1)(a) NMAC. As used in this opinion, "fee schedule" refers to the 2020 fee schedule, the one consulted in this case. *See* Workers' Compensation Administration, 2020 Health Care Provider Fee Schedule & Billing Instructions (Jan. 1, 2020) (hereinafter 2020 Health Care Provider Fee Schedule), p. 16, https://workerscomp.nm.gov/sites/default/files/documents/publications/fee_schedules/NewMexicoPFS2020.pdf.

975. Worker, nevertheless, has the burden to clearly demonstrate that the WCJ erred. *See Farmers, Inc. v. Dal Mach. & Fabricating, Inc.*, 1990-NMSC-100, ¶ 8, 111 N.M. 6, 800 P.2d 1063 (stating that appellate courts presume the correctness of the trial court's decision and that the appellant has the burden of clearly demonstrating the decision was error).

**{6}** In support of his contention that Employer/Insurer must fully reimburse his out-of-pocket medical cannabis costs, Worker relies principally on Section 52-1-49(A), which states:

> After an injury to a worker and subject to the requirements of the . . . Act, and continuing as long as medical or related treatment is reasonably necessary, the employer shall . . . provide the worker in a timely manner reasonable and necessary health care services from a health care provider.

Of relevance to this case, *Vialpando* interpreted "health care services" in Section 52-1-49(A) to include the use of medical cannabis. *See Vialpando*, 2014-NMCA-084, ¶¶ 1, 13. *Vialpando* also indirectly recognized that reimbursement to an injured worker—as opposed to direct payment to a health care provider—was an avenue through which an employer would cover the costs of the drug. *See id.* ¶¶ 1, 8, 10; *see also* 11.4.7.9(D)(2)(a) NMAC ("Only the worker shall be reimbursed for the out of pocket cost of medical cannabis."). Though *Vialpando* paved the way for workers to be reimbursed by employers for their medical cannabis purchases, it did not address whether such reimbursements are subject to cost limits. To persuade us they are not, Worker contends Section 52-1-49(A)'s use of the word "provide" requires Employer/Insurer to pay the entire cost of all reasonable and necessary medical treatment, thereby entitling him to full reimbursement of his out-of-pocket medical cannabis expenses.

**{7}** In response, Employer/Insurer observes that Section 52-1-49(A), on its face, does not indicate whether an employer must cover the full cost of health care services, medical cannabis included. *See Massengill v. Fisher Sand & Gravel Co.*, 2013-NMCA-103, ¶ 6, 311 P.3d 1231 (providing that, in determining the meaning of the Act, "[w]e look first to the plain meaning of the statute's words, and we construe the provisions of the [Act] together to produce a harmonious whole"). Along those lines, Employer/Insurer observes that Worker's argument runs counter to the Legislature's stated intent that the Act be interpreted "to assure the quick and efficient delivery of indemnity and medical benefits to injured and disabled workers *at a reasonable cost to the employers*." NMSA 1978, § 52-5-1 (1990) (emphasis added); *see also Eldridge v. Circle K Corp.*, 1997-NMCA-022, ¶ 10, 123 N.M. 145, 934 P.2d 1074 ("In construing the language of a statute, an appellate court's primary concern is to determine and give effect to legislative intent."). Employer/Insurer further contends Worker's argument is contradicted by other, express statutory requirements. *See Massengill*, 2013-NMCA-103, ¶ 6; *Cnty. of Bernalillo v. Sisneros*, 1994-NMCA-156, ¶ 9, 119 N.M. 98, 888 P.2d 980 (providing that "sections of statutes are not read in isolation").

**{8}** In particular, Employer/Insurer cites Section 52-4-5. That section requires the Administration to establish, and give effect to, pecuniary caps on the "health care services" referred to in Section 52-1-49(A). Specifically, Section 52-4-5(A) requires the Administration to "adopt and promulgate regulations establishing a schedule of maximum charges as deemed necessary for treatment or . . . service . . . provided by a health care provider." Pursuant to Section 52-4-5(A), and in response to *Vialpando*, the Administration promulgated 11.4.7.9(D) NMAC and established the maximum allowable payment for medical cannabis in the fee schedule. *See* 11.4.7.9(D) NMAC (limiting the worker's reimbursement for medical cannabis to the amount set forth in the fee schedule); 2020 Health Care Provider Fee Schedule, *supra* note 2, at p. 16. Section 52-4-5 further provides that the fee for services rendered by a health care provider may not exceed the maximum allowed by administrative rule. *See* § 52-4-5(B) ("A health care provider shall be paid his usual and customary fee for services rendered or the maximum charge established pursuant to Subsection A of this section, whichever is less. However, in no case shall the usual and customary fee exceed the maximum charge allowable."). When read together, Employer/Insurer submits, Sections 52-1-49(A) and 52-4-5 address the employer's obligation: to provide reasonable and necessary health care services by covering the cost of those services, but only up to the maximum allowable payment as provided in the fee schedule.

**{9}** We find Employer/Insurer's contentions persuasive, particularly in the absence of any reasoned countervailing argument by Worker. In his reply brief, Worker does not address Employer/Insurer's statutory construction arguments. He instead maintains:

> The fact that Worker was required to independently pay for reasonable and necessary medical treatment demonstrates that Employer/Insurer breached its duty to "provide" treatment pursuant to Section 52-1-49(A). . . . Being in breach of Section 52-1-49(A), Employer/Insurer should not be shielded with any protection afforded by other provisions of the . . . Act or by any [administrative rules].

We understand Worker to again contend that the word "provide" in Section 52-1-49(A) requires the employer to reimburse the worker the full amount paid for medical cannabis. This reiteration does little to persuade us that Employer/Insurer's statutory construction is flawed or that the WCJ erred. Nor does Worker's citation to *Bowles v. Los Lunas Schools*, 1989-NMCA-081, 109 N.M. 100, 781 P.2d 1178, *superseded by statute as stated in Martinez v. Sw. Landfills, Inc.*, 1993-NMCA-020, ¶ 27, 115 N.M. 181, 848 P.2d 1108, convince us of such error. Worker cites this Court's recitation in *Bowles* of the "general medical services rule" in workers' compensation cases: "[I]f the employer fails to [provide necessary medical treatment when it knows of the worker's injury], the claimant may make suitable independent arrangements at the employer's expense." 1989-NMCA-081, ¶ 26 (alteration, internal quotation marks, and citation omitted). Worker, however, does not explain how Employer/Insurer *failed* to provide necessary

medical treatment in this case such that the rule from *Bowles* would apply here.[3] *See Bowles*, 1989-NMCA-081, ¶ 26.

**{10}** In sum, Worker fails to persuade us the WCJ erred in concluding that he was entitled to reimbursement for his purchase of medical cannabis only up to the amount allowed by the fee schedule.[4] *See Farmers, Inc.*, 1990-NMSC-100, ¶ 8. Likewise, we reject Worker's corollary argument that 11.4.7.9(D) NMAC and the fee schedule are in conflict with Section 52-1-49(A), as the success of that argument is contingent on the correctness of Worker's assertion that Section 52-1-49(A) requires the employer to fully reimburse payments for medical cannabis.

## II.     Worker's Argument That the Administrative Rule Does Not Apply to His Case Is Unpreserved

**{11}** Worker advances a secondary argument for reversal—that 11.4.7.9(D) NMAC does not apply to him because his injury predates the adoption of that rule. Employer/Insurer contends that we should disregard this argument as unpreserved, and that addressing it on the merits would prejudice Employer/Insurer because it had no opportunity to present evidence below on the reasonableness of the reimbursement— evidence that would be relevant were 11.4.7.9(D) NMAC held inapplicable. Our review of the record confirms this issue was not brought to the WCJ's attention. *See* Rule 12-321(A) NMRA ("To preserve an issue for review, it must appear that a ruling or decision by the trial court was fairly invoked."). Further, Worker does not respond to Employer/Insurer's preservation argument in his reply brief, and so we treat the matter as conceded and decline to reach this issue. *See Delta Automatic Sys., Inc. v. Bingham*, 1999-NMCA-029, ¶ 31, 126 N.M. 717, 974 P.2d 1174 (stating that, under certain circumstances, the failure to respond to a contention by the appellee "constitutes a concession on the matter"); *Crutchfield*, 2005-NMCA-022, ¶ 14 (declining to address an unpreserved issue).

## CONCLUSION

**{12}** Having rejected Worker's arguments for reversal, we affirm.

**{13}   IT IS SO ORDERED.**

---

3To the extent Worker contends that the mechanism by which Employer/Insurer provided for his treatment—i.e., through reimbursement (as opposed to direct payment to a provider)—somehow violated Employer/Insurer's duty under Section 52-1-49(A) or rendered Section 52-4-5, 11.4.7.9(D) NMAC, and the fee schedule inapplicable, his argument appears unpreserved and is otherwise undeveloped. We accordingly decline to consider it. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (declining to entertain a cursory argument that included no explanation of the party's argument and no facts that would allow the Court to evaluate the claim); *Crutchfield v. N.M. Dep't of Tax'n & Revenue*, 2005-NMCA-022, ¶ 14, 137 N.M. 26, 106 P.3d 1273 ("Absent . . . citation to the record [where a ruling was invoked] or any obvious preservation, we will not consider the issue.").
4Worker does not challenge the reasonableness of this rate.

**JENNIFER L. ATTREP, Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**KATHERINE A. WRAY, Judge**